IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JONATHON ADEYANJU,

                        Petitioner,                              OPINION & ORDER

     v.                                                   11-cv-81-wmc

REED RICHARDSON, Warden,
Stanley Correctional Institution,

                        Respondent.

Jonathon Adeyanju, an inmate at Stanley Correctional Institution, has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his July 24, 2006, conviction in the Circuit Court for Dane County, Wisconsin, on three counts of attempted first-degree intentional homicide while armed and three counts of endangering safety by use of a firearm. In a previous order of this court, Adeyanju was allowed to proceed on the following claims: (1) his trial counsel was ineffective for failing to seek a jury instruction on the lesser included offense of first degree recklessly endangering safety; (2) trial counsel was ineffective for not correcting the court's misstatement that he had pleaded guilty to a charge, which he had not; (3) trial counsel was ineffective for allowing admission of gang-related evidence in violation of the court's order; and (4) the trial court erred in admitting gang-related evidence. The State has filed a response to the petition and the parties have filed briefs on the merits. For reasons articulated below, the court must deny the petition.

FACTS

The following facts are drawn from the Wisconsin Court of Appeals' decision, *State v. Adeyanju*, 2009 WI App 128, 321 Wis. 2d 239, 773 N.W. 2d 225(Wis. Ct. App. July 16, 2009) (per curiam) (unpublished),[1] and the record of the state court trial and post-conviction proceedings:

On August 9, 2005, two cars and a pickup truck stopped in front of a house on Perry Parkway in Oregon, Wisconsin. Several men dressed in black with their faces covered by bandanas jumped out of the vehicles and fired a hail of bullets up the driveway toward a group of people near the garage, then jumped back in the vehicles and sped off. Three of the people near the garage -- Chomrouen Um, Kimrien Chham and Samol Um -- suffered gunshot wounds.

The State charged petitioner Jonathon Adeyanju, his brother Jeremy Adeyanju, and nine other co-participants with three counts of attempted first-degree intentional homicide, in violation of Wis. Stat. 940.01(1),[2] and three counts of endangering safety by use of a firearm, in violation of Wis. Stat. § 941.20(2)(a),[3] all as parties to the crime. The alleged co-conspirators were friends and family members who also happened to be gang members,

---

[1] A copy of the Wisconsin Court of Appeals' decision is in the record at dkt. #12-5.

[2] In Wisconsin, a person is guilty of first-degree intentional homicide when he or she "causes the death of another human being with intent to kill that person or another." Wis. Stat. § 940.01(1). The word "intent," as used in § 940.01(1), means either that the actor "has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result." Wis. Stat. § 939.23(4).

[3] Endangering safety by use of a dangerous weapon is committed by one who intentionally discharges a firearm into a building under circumstances in which he or she should realize there might be a human being present. Wis. Stat. § 941.20(1)(d).

although they were not all in the same gang. Co-defendant Paul Mey and the Adeyanus were "Bloods," and many of the other participants were "Crips."

Despite their rival gang affiliations, the State's theory of the case was that the shooters united to neutralize a threat by members of the "Chicago Bloods" against co-defendant Mark Mey and the Adeyanjus' younger brother, Terrance, who were both Crips. The Chicago Bloods had allegedly issued a "shoot on sight" directive against Mark Mey for stealing money and a gun from a high-ranking member known as "Fat Boi," and word of that threat had filtered down to the Meys, Adeyanjus and their friends. (Although it is unclear whether Fat Boi was also targeting Terrance Adeyanju, he apparently had been with Mark Mey when he stole Fat Boi's money and gun and, therefore, felt at risk as well.) Some of the individuals in or near the garage on Perry Parkway were Bloods, although Fat Boi was not among them.

Before trial, petitioner had accepted the State's offer to plead guilty in exchange for the State reducing the charges to three counts of being a party to the crime of first degree reckless injury, with no obligation that he testify on the State's behalf. However, he backed out of the deal just days before the trial was to begin. (Dkt. #12-35: 35.)

By the time of trial, seven of the 11 individuals charged in the shooting had entered plea agreements with the State. The remaining four defendants -- Mark and Paul Mey, petitioner and his brother Jeremy -- were tried jointly. Several co-conspirators testified to participating in the incident as shooters, placing petitioner at the scene with a gun. According to one of the co-conspirators, Lucas Rodriguez, the purpose of the shooting was

"to get" the Bloods "before they get us," explaining that "get them" meant to try to kill them. (Dkt. # 12-19: 115: 14; 117: 21.)

The petitioner was represented at trial by attorney Edward Krueger. His defense, like that of the three co-defendants, was that (1) he was not at the scene of the shooting and (2) the State's witnesses were lying, either to curry favor with the State or to pin the blame on the co-defendants for the misdeeds of uncharged gang members. To this end, attorney Krueger asserted in his opening statement that "Jonathon Adeyanju wasn't there." (Dkt. #12-17: 79:13.) During the evidentiary portion of the trial, attorney Krueger focused on the absence of physical evidence connecting Adeyanju to the crime and the witnesses' motives to lie. Ultimately, none of the co-defendants chose to testify, including petitioner.

As a secondary defense, attorney Krueger attempted to establish through the testimony of alleged co-conspirators who had turned State's witnesses that the participants had no intent to kill anyone when they fired their guns in the driveway. Indeed, petitioner's counsel began his closing argument to the jury by highlighting this testimony and arguing that running a risk of hitting people does not rise to the level of intent to kill. (Dkt. #12-33: 47-48.) Counsel for petitioner's brother had earlier made a similar argument during his closing. (Dkt. #12-33, 10: 14-22.) Moreover, in an attempt to avoid the trap of appearing to make inconsistent arguments, petitioner's counsel clarified that he was making this argument "not with regard to Jonathon or any of the defendants here today," but rather with respect to the co-conspirators generally, whoever they were. (*Id.*) His counsel then turned to argue that for Adeyanju there was no reliable evidence

proving petitioner was even present at the shooting, pointing out other weaknesses in the State's case against him.

Before trial, Krueger prepared a jury instruction for first degree recklessly endangering safety as a lesser included offense of attempted first degree intentional homicide. A person is guilty of first-degree recklessly endangering safety when he endangers the safety of another person under circumstances showing utter disregard for human life. Wis. Stat. § 941.30. The crime of first-degree recklessly endangering safety is a lesser-included offense of attempted homicide in that it does not require intent to kill. However, the instruction was never discussed at the jury instruction conference, and attorney Krueger did not object to its absence from the final instructions.[4] The jury found Adeyanju and the other three defendants guilty on all six counts.

After sentencing, Adeyanju filed a post-conviction motion for a new trial, arguing that attorney Krueger provided ineffective assistance by failing to request a lesser-included recklessly endangering safety instruction for each attempted first-degree intentional homicide count. At an evidentiary hearing on the motion, Krueger testified that he did not remember discussing the possibility of a lesser-included offense instruction with Adeyanju, but if had done so, he would probably remember it. (Dkt. #12-35: 37.) He also concluded having no strategic reason for failing to ask for the instruction; rather, he

---

[4] A defendant is entitled to a lesser included offense instruction under Wisconsin law only if there is some reasonable doubt as to some particular element included in the higher degree of crime. *State v. Foster*, 191 Wis. 2d 14, 23, 528 N.W.2d 22, 26 (Ct. App. 1995). A trial court is under no obligation to give a lesser-included offense instruction unless one of the parties requests it. *State v. Myers*, 158 Wis. 2d 356, 364, 461 N.W. 2d 777 (1990). So far as it appears, none of the four defense attorneys asked for the lesser included offense instruction, nor did the prosecutor.

just "didn't think of it." (Dkt. #12-35: 15, 16.)   Attorney Krueger further testified that Adeyanju did not specifically say that he wanted an all-or-nothing defense, and he admitted to counsel that he had been at the scene of the shooting.   Counsel recalled, however, that Adeyanju was adamant that he not testify against his brother or anyone else.   (Dkt. # 12-35: 22, 34.)   Counsel also recalled that Adeyanju was scared of going to prison because he had crossed both the Crips and the Bloods, which were the two primary gangs in prison. (Dkt. #12-35: 34).

Absent Adeyanju taking the stand and explaining that he didn't intend to kill anyone, Attorney Krueger further explained that his only viable defense at trial was to argue that Adeyanju was not present at the shooting, emphasizing the lack of physical evidence tying Adeyanju to the scene.   (Dkt. #12-35: 24.)   However, as a "collateral" defense, attorney Krueger also attempted to establish through the testimony of the co-defendants that the participants had no intent to kill anyone when they fired their guns in the driveway.   (Dkt. #12-35: 23.)   At the hearing, Krueger also acknowledged that this lack-of-intent argument would have been consistent with the lesser-included offense of first-degree reckless endangerment instruction.   (Dkt. #12-35: 15.)   He also acknowledged that, heading into the trial, he thought Adeyanju was likely to be convicted on the attempted homicide counts.   (Dkt. #12-35: 38.)

At the hearing, Adeyanju confirmed that he told Krueger he did not want to testify or go to prison.   (Dkt. #12-35: 44-46, 50-51.)   He also testified that he rejected the plea deal because his family was receiving threats.   (Dkt. #12-35: 50.)

In denying relief, the state trial court found attorney Krueger was not ineffective for failing to ask for a lesser-included offense instruction for two reasons: (1) the jury was not reasonably likely to have acquitted Adeyanju on the attempted homicide charge and, therefore, counsel had no basis to request a lesser-included instruction; and (2) seeking a lesser-included instruction would have been inconsistent with Adeyanju's stated goal of obtaining a full acquittal. (Dkt. #12-35: 94-96.) On this latter point, the trial court found:

> I am satisfied that it was clear to Mr. Krueger, whether or not it was explicitly stated, certainly implicitly from this defendant, who, at times, may have been less than communicative with Mr. Krueger as to his desires … what the defendant wanted to do here was get off. Was to have an acquittal. To walk out of here with six not guiltys, and … not having to worry about going to prison, or having to worry about advising anybody, beyond Mr. Krueger, that he had been present.
>
> And I am satisfied that this is consistent with the theory of the defense that Mr. Adeyanju himself wanted, and that Mr. Krueger followed through in that regard, and gave him that defense.

(*Id.* 87-88.)

Adeyanju appealed, reasserting his claim that counsel was ineffective for adopting an "all-or-nothing" approach on the attempted homicide counts, rather than settling for convictions on the lesser-included offenses. Adeyanju pointed out that a lesser-included instruction would have been consistent with attorney Krueger's collateral argument that the State had not proven intent. (Dkt. #12-2: 25.) Further, he argued, there was no downside: if the jury had been convinced that Adeyanju was *not* present, it would have acquitted him of all charges, and the lesser-included instruction would have done him no harm; on the other hand, if the jury found he *was* present, then it was very likely to convict

him of the weapons offenses in counts four to six, which did not require intent to kill, but might not find an intent to kill in the presence of a lesser-included instruction on the remaining homicide counts. (*Id*. at 26-27.)

On July 16, 2009, the Wisconsin Court of Appeals affirmed his convictions and the order denying postconviction relief. *State v. Adeyanju*, 2009 WI App 128, 321 Wis. 2d 239, 773 N.W. 2d 225 (Wis. Ct. App. July 16, 2009) (per curiam) (unpublished). (Dkt. #12-5.) Evaluating Adeyanju's claim under *Strickland*'s framework, the state appellate court focused solely on the performance prong. First, the court explained that Krueger's actual reason (or lack thereof) for failing to request the lesser included instruction was irrelevant, since the test for defective performance under *Strickland* is an objective one. *Id*. ¶ 6. As the court explained:

> [E]ven if trial counsel lacked a strategic reason at the time, a claim of deficient performance fails if counsel's action was one that an attorney could reasonably have taken after considering the question, in light of the information available to trial counsel at the time. Trial counsel's own subjective explanation of his reasons for acting or not acting, or trial counsel's lack of any reason at all, is not relevant to the analysis.

*Id*.

Second, the Wisconsin Court of Appeals disagreed with the state's argument that requesting a lesser-included instruction would have been inconsistent with Adeyanju's "not present" defense, explaining:

> The fact is that counsel was *already* making that inconsistent argument to the jury, although in a less direct way. Obtaining the lesser-included instruction would not have obligated counsel to make the argument in a more directly inconsistent way, because the mere giving of the instruction does not require counsel to base argument on it. The jury would hear that instruction from the court, and later find it in the written instructions, regardless of whether

or how much counsel based an argument on the instruction. Simply placing this instruction before the jury can result in the jury using it, even if there is no argument on that point.

*Id.* ¶ 11.

Third, it agreed with Adeyanju that convictions (and a prison sentence) on counts four to six (the endangering safety by use of a firearm counts) were "a given" in the event the jury rejected the argument that he was "not present" at the shooting. Still, the court reasoned, the likelihood of conviction on counts four to six in the event the jury rejected his principle defense did not change the analysis with respect to whether to go for broke on the attempted homicide counts:

> [T]here still remains the question of what *additional* convictions may or may not be entered on counts one to three. The question for the defendant is still what outcome he prefers on counts one to three: acquittals or mistrials, convictions on attempted homicide, or convictions on recklessly endangering safety. The potential penalty range between those choices is large (from nothing to class F to class B), and both convictions are worse than the class G endangering felonies in counts four to six. Thus, the dilemma of the all-or-nothing defense is lessened only slightly, if at all, by the probable convictions on counts four to six.

*Id.* ¶ 19 (emphasis in original) (citations omitted). In other words, even though acquittal on all six counts was unlikely "in any scenario in which the lesser-included instruction could have played a role" (*i.e.*, if the jury rejected Adeyanju's "not present" defense), it was still reasonable to adopt an all-or-nothing strategy on the homicide counts because convictions on the lesser-included offense for recklessly endangering safety would have "had a significant impact on Adeyanju's future." *Id.* ¶ 20.

Fourth and finally, the court rejected Adeyanju's argument that the all-or-nothing approach was unreasonable in his case, because the evidence in support of his "not-present" defense was so weak.   In the court's view,

> the strength or weakness of [the not-present defense] was not relevant to the calculation of whether to ask for the lesser-included instruction.   As we discussed above, if the jury accepted the not-present defense, the lesser-included instruction should play no role in its deliberation, whether to the defendant's benefit or detriment.   Only if the jury rejected that defense would it turn to the question of intent to kill, and then possibly use any lesser-included instruction that might have been requested.   In essence, a defendant trying to decide whether to ask for the lesser-included instruction would start by assuming that the jury has *already* rejected the not-present defense; the strength or weakness of that defense would not enter into it.

*Id*. ¶ 21 (emphasis in original).   The Wisconsin Supreme Court denied Adeyanju's petition for review.

On January 31, 2011, Adeyanju filed his federal petition for a writ of habeas corpus, and this court stayed the petition to allow him to return to state court and exhaust additional claims.   (Dkt. #3.)   Adeyanju then filed a postconviction motion under Wis. Stat. § 974.06 in the state trial court, seeking reversal of his conviction on the following grounds:   (1) his trial counsel provided ineffective assistance when he failed to keep gang-related evidence out of the trial; (2) the trial court erred in admitting gang-related evidence; (3) the trial court made a prejudicial misstatement in the jury instructions; (4) the cumulative effect of trial errors deprived him of a fair trial; and (5) he was entitled to a new trial in the interest of justice.   The trial court rejected all of these arguments and denied his motion on May 24, 2011 (dkt. # 12-36); the Wisconsin Court of Appeals subsequently affirmed, *State v. Adeyanju*, 2011AP1496 (Wis. Ct. App. July 16, 2015)

(unpublished disposition) (dkt. #12-13). On January 7, 2016, the Wisconsin Supreme Court denied Adeyanju's petition for review, and on January 27, 2016, this court lifted the stay.[5]

## OPINION

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act, which, among other things, restricted the ability of federal courts to grant habeas relief to a state prisoner whose claims have been adjudicated by the state courts. Specifically, when a prisoner challenges his state court conviction on grounds already adjudicated on the merits in state court, the petitioner must establish the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law if the rule the decision applies differs from governing law set forth in Supreme Court cases. A decision involves an 'unreasonable application' of Supreme Court precedent if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case." *Bailey v. Lemke*, 735 F.3d 945, 949–50 (7th Cir. 2013) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002), and *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).

This standard of review is applied to the decision of the last state court to adjudicate a given claim on the merits, which in this case is the Wisconsin Court of Appeals' decision. *See Williams v. Bartow*, 481 F.3d 492, 497–98 (7th Cir. 2007). Because the Wisconsin

---

[5] Additional facts related to these claims are discussed below.

Court of Appeals explained its decision in a reasoned opinion, this court's task is straightforward: it "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018). Under § 2254(d)(2), a federal court may grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. But, again, the federal court owes deference to the state court: the underlying state court findings of fact and credibility determinations against the petitioner are presumed correct unless the petitioner comes forth with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014); *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). Under this deferential review, petitioner Adeyanju has failed to identify viable grounds to grant relief.

## I. Ineffective Assistance of Counsel

### A. Failure to Request Lesser-Included Instruction

Petitioner's strongest claim is that his trial counsel, Edward Krueger, was ineffective in failing to request a jury instruction on the lesser-included offense of first degree recklessly endangering safety. In addition to the hurdles set by the standard of review for § 2254 as set forth above, petitioner's claim of ineffective assistance of counsel is governed by the two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, petitioner must show that counsel's performance was deficient under an "an objective standard of reasonableness." *Id*. at 687–88. The general question under

this prong is whether counsel acted "within the range of competence demanded of attorneys in criminal cases" in light of "prevailing professional norms." *Id*.; *see also id*. (question is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance"). In making this determination, a court's "scrutiny of counsel's performance must be highly deferential" and viewed from counsel's perspective at the time. *Id*. at 689. Indeed, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Second, petitioner must show prejudice, which the Court defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. This does not require a showing that "counsel's deficient conduct more likely than not altered the outcome in the case"; rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.; *see also Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable."). The court need not reach both prongs of the *Strickland* inquiry if the petitioner makes an insufficient showing as to one. *Strickland*, 466 U.S. at 697.

Petitioner here argues that the Wisconsin Court of Appeals applied the first prong of *Strickland* unreasonably in concluding that attorney Krueger had an objectively reasonable basis for not requesting a lesser-included jury instruction on recklessly endangering safety. When *Strickland's* deferential standard for measuring attorney performance is viewed through the lens of AEDPA's own deferential standard, the result is

"doubly deferential" in that the question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 89. Said another way, "only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). Accordingly, if the Wisconsin Court of Appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions," this court must deny relief. *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006) (quoting *Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000)).

Petitioner first argues that it was unreasonable for the Wisconsin Court of Appeals to find that attorney Krueger's performance was not deficient after he admitted his failure to request a lesser-included instruction was an oversight, rather than a deliberate, strategic decision. Petitioner appears to be suggesting that if an attorney admits an omission was the result of forgetfulness, rather than trial strategy, his performance is constitutionally deficient *per se*. Unfortunately for petitioner, that is *not* what *Strickland* holds or even suggests. To the contrary, the United States Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, at 688). In other words, the test is objective: the question "is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) (citing *Strickland*, at 688). Thus, "an inadvertent omission does not automatically equal constitutionally deficient performance[.]" *Harris v. Cotton*, 365

F.3d 552, 555–56 (7th Cir. 2004) (citing *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)); *United States v. Smith*, 10 F.3d 724, 729 (10th Cir. 1993) ("[E]ven if Defense Counsel had been aware of the availability of the lesser included offense of bank larceny, Counsel's actual representation would still have been within the range of objectively reasonable representation."). For this reason, the Wisconsin Court of Appeals properly looked beyond attorney Krueger's stated reasons (or lack thereof) for omitting the lesser-included instruction and asking instead whether his action was one that an attorney reasonably could have taken under the same circumstances. *State v. Adeyanju*, 2009 WI App 128, ¶ 6. If it were otherwise, a defendant whose attorney confessed post-trial that his conduct was the result of oversight or ignorance would be better off than the defendant whose attorney engaged in the same conduct deliberately for strategic reasons.

Still, an attorney's explanation for his actions has relevance to a *Strickland* analysis. When counsel testifies that his actions were taken as part of a deliberate trial strategy, after conducting an adequate investigation, the court begins its analysis *presuming* that the attorney performed in an objectively reasonable manner. *See Bullock v. Carver*, 297 F.3d 1036, 1051 (10th Cir. 2002) ("[W]here it is shown that a challenged action was, in fact, an adequately informed strategic choice, we heighten our presumption of objective reasonableness and presume that the attorney's decision is nearly unchallengeable."); *Brown v. Sternes*, 304 F.3d 677, 691 (7th Cir. 2002) ("Ordinarily when an attorney articulates some strategic reason for a decision, we will defer to that choice."). And when evidence of trial strategy is lacking, as here, the court evaluates counsel's actions without this stronger presumption. *See Mitchell v. Enloe*, 817 F.3d 532, 538–39 (7th Cir. 2016)

(*Strickland*'s presumption of strategic decision-making by counsel does not extend to situations where there was "no strategic rationale underlying [the] errors.") (quoting *Woolley v. Rednour*, 702 F.3d 411, 422–23 (7th Cir. 2012)); *Carter v. Duncan*, 819 F.3d 931, 942 (7th Cir. 2016) ("[A]lthough we defer to *strategic* decisions, we first assure ourselves that a strategic decision was made, because '[t]he consequences of inattention rather than reasoned strategic decisions are not entitled to the presumption of reasonableness.'") (quoting *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012)) (emphasis in original).

Importantly, nothing in the Wisconsin Court of Appeals' decision suggests that it misunderstood this distinction. The court neither expressed any misunderstanding about attorney Krueger's testimony, nor did it grant any deference to his decision-making. Instead, the court properly framed the question as whether counsel's actions were "objectively reasonable" under the circumstances. *Adeyanju*, 2009 WI App 128, ¶11. Under *Strickland*, this was the proper approach.

The closer question is whether the Wisconsin Court of Appeals reasonably applied *Strickland* when it found attorney Krueger's failure to pursue a lesser-included instruction was objectively reasonable under the circumstances. To answer that question, this court begins with the straightforward proposition that pursuing a lesser-included offense is not without its own set of risks. Not only may it dilute the power of an assertion of complete innocence, causing the jury to question the defense's credibility, but in addition, as the Court of Appeals observed, it may lead to conviction where the jury might otherwise acquit

by offering jury members a "compromise" option in the event they cannot agree on a unanimous verdict to convict on the higher offense.

For these reasons, numerous cases have recognized that pursuing an "all or nothing" strategy of electing against instructions on lesser-included offenses can be a valid trial strategy. *See, e.g., Mitchell*, 817 F.3d at 539 (attorney did not perform deficiently in failing to present provocation jury instruction where theory of case was self-defense and defendant's testimony was inconsistent with provocation); *Adams v. Bertrand*, 453 F.3d 428, 435–36 (7th Cir. 2006) (counsel's failure to seek jury instruction for lesser included offense of third-degree sexual assault in second-degree sexual assault prosecution was reasonable trial strategy where counsel decided that allowing main offense to stand on its own would make it more difficult for government to prove its case given weakness of evidence on force element of main offense); *Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005) (counsel not ineffective at murder trial for failing to request instructions relating to self-defense and the lesser included offenses of first-degree and second-degree manslaughter where counsel's "primary line of defense was that Tinsley was not the shooter"). Indeed, in cases where a defendant had denied guilt, courts have held that he "practically precludes a request for an instruction on a lesser included offense." *Yu v. United States*, No. 97 CIV. 2736, 1997 WL 423070 at *3 (S.D.N.Y. July 29, 1997) (internal quotation marks omitted)); *see also Kubat v. Thieret*, 867 F.2d 351, 365 (7th Cir. 1989) (noting "the general proposition that it is reasonable to forego a lesser included offense instruction where a defendant has presented an alibi defense"); *Rios v. United States*, No. No. CV–91–4384, 1992 WL 328931 at *6–7 (E.D.N.Y. Oct. 13, 1992) (where defendant presented no

evidence on a partial defense but maintained throughout the trial that he was simply "in the wrong place at the wrong time," counsel had no basis to request an instruction on the lesser included offense).

Here, as attorney Krueger testified, his client's basic defense was that he was not at the scene of the shooting and, therefore, was totally innocent of all charges. Had this been the *only* defense presented by attorney Krueger, then foregoing a lesser-included instruction that implicitly conceded at least the possibility of petitioner's presence at, and even involvement in, the shooting would have been objectively reasonable. The question is whether the reasonableness calculus changes as a result of attorney Krueger's secondary argument that the jury should acquit on the attempted homicide accounts because the State had not proven his client's intent to kill. As a result of counsel making this second argument, the Wisconsin Court of Appeals thought that requesting a lesser-included instruction on reckless endangerment would have been *consistent* with attorney Krueger's larger defense. Still, that court found it was reasonable for counsel *not* to request the instruction, because the range of outcomes on the attempted homicide counts (from acquittal to conviction for recklessly endangering safety to conviction for attempted homicide) *could* have had a "significant impact" on petitioner's future, even though he was likely to be convicted on counts four to six in the event the jury rejected his "not present" defense.

This reasoning is obviously problematic. As petitioner points out, a defendant considering whether to seek an instruction on a lesser-included offense will *always* face choices that could have a "significant impact" on his future. As with any gamble, "going

for broke" has the potential to reap higher rewards -- but also higher losses -- than hedge betting.   In noting that petitioner faced a wide range of outcomes on the attempted homicide count with or without the lesser-included instruction, the Wisconsin Court of Appeals did little more than state the obvious.   In doing so, the court never answered the central question under *Strickland*:   whether it was objectively *reasonable* for attorney Krueger to wager it all on acquittal for attempted homicide, rather than mitigate the risk by asking for a lesser-included instruction that did not require a finding of intent to kill, while still arguing his client's lack of intent.   Given the flaw in its logic, this court cannot agree with the respondent that the Wisconsin Court of Appeals "reasonably" adjudicated petitioner's *Strickland* claim.

This does not mean, however, that petitioner is entitled to habeas relief; it merely means that "further inquiry is necessary." *Brady v. Pfister*, 711 F.3d 818, 827 (7th Cir. 2013) ("If a state court's rationale does not pass muster under the *Williams v. Taylor* standard for Section 2254(d)(1) cases, the only consequence is that further inquiry is necessary.").   In *Brady*, the Seventh Circuit held that when a federal court cannot afford § 2254(d)(1) deference to the last state court's expressed reasoning, "the federal court should turn to the remainder of the state record, including explanations offered by lower courts." *Id*.   Although *Brady* left unanswered whether a federal court should apply AEDPA deference to lower courts' reasoning, or whether it should instead review the petitioner's claim *de novo*, the Seventh Circuit held that the choice of review standard did not matter so long as "the record as a whole supports the state court's *outcome*," since "even under *de novo* review the correct result would be to deny the petition for a writ of habeas

corpus." *Id* (emphasis added); *accord Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a).").

In this case, the court is persuaded from the record as a whole that Attorney Krueger's performance was objectively reasonable under *Strickland*. In particular, this court disagrees with the state appellate court's *first* premise -- namely, that attorney Krueger "opened the door" to the lesser-included instruction simply by challenging the State's proof of intent to kill. As attorney Krueger testified, that argument was "collateral" to petitioner's (and the other co-defendants') principle defense, which was that none of the defendants were involved in the shooting. More importantly, as attorney Krueger told the jury, he was not making the lack of intent argument with respect to petitioner or any of the other co-defendants at trial, whom he maintained were not there, but rather as to the others who *were* there.

Given this position, the court returns to the reasoning of numerous other decisions finding that the introduction of a lesser-included instruction as a partial defense may well have confused the jury, or worse have been viewed as an implicit concession that the evidence was sufficient to place petitioner at the scene, either of which might undermine counsel's credibility, as well as further dilute what was already a difficult defense. Having committed to a primary exculpatory defense, counsel was not required to pursue

instructions incompatible with that defense, simply because he intimated an alternative theory for the jury to acquit based on a lack of intent to kill by any shooter.

The Wisconsin Court of Appeals posited that attorney Krueger might have avoided the risks posed by the arguable introduction of an inconsistent defense by requesting the instruction, but by not making *any* argument based on a lack of intent, while allowing the jury to default to a lesser included offense if they were ultimately persuaded that the defendant was present. In this way, Krueger could have argued for the "home run" defense without undermining his own credibility by arguing for the lesser as well. Maybe, but the relevant question is not what attorney Krueger *could* have done; the question is whether counsel's actions were objectively reasonable at the time and under the circumstances. As to *that* question, the court finds that whether lack of intent was argued by counsel or not, it was *reasonable* for attorney Krueger to have concluded that the mere presence of a lesser-included offense instruction could undermine his main defense *and* petitioner's goal of total acquittal. Indeed, as the trial court found, foregoing a jury instruction on a lesser-included offense was consistent with "the theory of defense that [petitioner] himself wanted," which was to walk out with "six not guiltys" and not have to testify or acknowledge having been present at the shooting. (Dkt. #12-35: 88.)

In fact, just days before trial, petitioner *rejected* the State's offer to plead to lesser charges, opting instead to take his chances at trial based at least in part on his hope of avoiding prison altogether. A lesser-included instruction on recklessly endangering safety not only was inconsistent with petitioner's exculpatory defense, but would have all but

ensured a prison sentence on the attempted homicide counts in the event the jury rejected that defense.

Finally, petitioner now questions how attorney Krueger's "all or nothing" defense could be deemed reasonable after acknowledging that the jury was not likely to believe his client had not been at the shooting. In this way, petitioner compares his case to *United States ex rel. Barnard v. Lane,* 819 F.2d 798 (7th Cir.1987), where the court found counsel ineffective for failing to tender justification and manslaughter instructions in a murder trial. In that case, however, the defendant testified that: (1) he had loaded his gun anticipating trouble with three men he knew; and (2) when trouble arose, he shot one of them in the chest. In light of this admission, the court found a jury had "no alternative but to find Barnard guilty" in the absence of a justification or manslaughter instruction. *Id*. at 803-04. Trial counsel's belief that the jury would acquit Barnard "could only be based on hope that the jury would for some reason fail to follow instructions," which was akin to "no defense at all." *Id*. at 803. In addition, the jury sent multiple notes to the judge during its deliberations, which indicated its "clear reluctance" to find Barnard guilty of murder. *Id*. at 804. Under these circumstances, trial counsel's decision to withhold justification and manslaughter instructions "forced the jury to convict Barnard" based on his own testimony. *Id*.

In contrast, petitioner here neither testified nor admitted to being present at the shooting, *and* his counsel principally argued to the jury that it should acquit on the ground that he was not there. Although his "not present" defense may have been weak, the jury still had the *choice* to accept it and acquit him if it had reasonable doubt about his presence.

In *Barnard*, the defendant not only *admitted* his involvement in the shooting, but *admitted* shooting the victim in the chest. In that scenario, where the victim's own testimony guaranteed his conviction, the Seventh Circuit found it unreasonable for counsel to fail to request instructions that might have led to the jury to find his admitted actions were justified, or at least amounted to a lesser offense.

Petitioner's case presents a *much* less extreme set of circumstances. His insistence on going to trial, while simultaneously resistant to agreeing to serve any time or testifying, gave his counsel few options. Like his three co-counsel, and in accordance with his client's goals, Krueger went for broke, pursuing an exculpatory defense that emphasized the lack of physical evidence connecting his client to the scene, albeit arguing collaterally that the State had not proven beyond a reasonable doubt that even the co-conspirators who admitted involvement in the shooting did so with an intent to kill.

Understandably enough, now knowing the outcome, petitioner would have preferred his lawyer had ignored his wishes and taken a different approach. However, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough*, 540 U.S. at 8. Viewing counsel's actions under the circumstances present at the time and without the distorting effects of hindsight, this court is satisfied that counsel's decision to forego a lesser-included instruction on recklessly endangering safety was within the range of competence demanded of attorneys in criminal cases. "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Applying that deferential standard to Attorney Krueger's performance in light of the record

as a whole, this court agrees with the Wisconsin Court of Appeals' ultimate conclusion that attorney Krueger's performance was not deficient under *Strickland*.    Accordingly, petitioner is not entitled to a writ of habeas corpus on this claim.

### B.    Failure to Correct Trial Court's Misstatement During Jury Instructions

When instructing the jury on counts two and three (both attempted homicide counts), the trial court made the following statement with respect to each of the defendants:

> To this charge, each of the defendants before you has entered a plea of guilty, which means the State must prove every element of the offense charged beyond a reasonable doubt.

Tr. of Jury Trial, (dkt. #12-34:5-7).    Although not corrected at the time by the court or counsel, this was an obvious misstatement (or mistranscription), since the very reason for the trial, as the jury had been, and would again be told, was that all of the defendants, including Adeyanju, had in fact pleaded "not guilty."    Regardless, the parties agree that the court misspoke in incorrectly stating that the defendants had pled "guilty."

In his § 974.06 motion, Adeyanju argued that trial counsel was ineffective for not objecting to this error.    The court of appeals rejected this argument, finding that Adeyanju was not prejudiced by the circuit court's misstatement:

> We believe that most jurors would understand this was an error by the court. The remainder of the instructions made it clear that it was the jury's task to determine the defendants' guilt on all counts that were the subject of the trial.

 (Dkt. #12: 13:3.)

This was not an unreasonable conclusion. Any rational juror, after hearing all of the instructions and sitting through a multi-day trial, would have recognized that Adeyanju and the other defendants had pled "not guilty" to the counts. Indeed, the dependent clause of the very sentence to which Adeyanju objects states that to convict him of the charge, the jury had to find that the State had proven every element of the offense beyond a reasonable doubt. In addition, the court properly instructed the jury on count 1 and counts 4 through 6, indicating that the defendants had pled "*not guilty*" to those counts. Viewing the record in its entirety, the Wisconsin Court of Appeals could reasonably conclude that the jury would have understood that Adeyanju had also pled *not* guilty to Counts 2 and 3, and the trial court judge had simply misspoken while reading the instruction. Thus, this court is unable to find that Adeynaju was prejudiced by his counsel's failure to object to the court's error.

## II. Admission of Gang-Related Evidence

Before trial, defense counsel filed a motion asking the court to prohibit the State from introducing evidence concerning photographs, writings, and any other evidence dealing with the subject of gangs or gang affiliations with respect to the defendants. (Dkt. #23-1 at 115.) The trial court ruled that the State could not use such evidence "gratuitously," but could introduce it for context to explain the relationships between the various people who were involved. (*Id*.) During the nine-day trial, approximately 250 references to gangs or gang membership were made, mostly without objection by the defense. In fact, defense counsel elicited about 150 of these gang references.

Petitioner makes four related arguments based on the gang references: (1) the State violated his rights to due process when it violated the court order; (2) defense counsel was ineffective for failing to object to the State's violations; (3) defense counsel's introduction of gang-related evidence prejudiced the defense; and (4) the trial court violated petitioner's right to due process when it allowed the gang references.   Ruling on these same arguments in the context of petitioner's motion under Wis. Stat. § 974.06, the trial court found that neither the prosecutor nor any defense counsel had violated the pretrial order.   (Oral Ruling on Motion (dkt #12-36) 3-4.)   The Wisconsin Court of Appeals affirmed, citing the following reasons:   (1) to the extent that some of the references were elicited by petitioner's trial counsel or other defense counsel, those references could not violate the pretrial order restricting the use of such evidence by the State; and (2) the gang references elicited by the State were "relatively few in number," which was insufficient to undermine confidence in the outcome.   (Op. and Ord., Wis. Ct. of Appeals, July 16, 2015 (Dkt. #12-13) 3.))   Finally, the Court of Appeals declined to consider petitioner's argument that the circuit court should have barred gang references entirely on grounds of unfair prejudice, explaining that "challenges to discretionary evidentiary rulings cannot be made in motions under Wis. Stat. § 974.06."   (Dkt. #12-13: 4.)

Although this court agrees with respondent that the Wisconsin Court of Appeals arrived at the correct result in rejecting petitioner's claims based on the gang-references, it does so for a more basic reason than those advanced by respondent or the court of appeals: defendants effectively withdrew the motion to bar the gang references before the trial

began.  As argued by counsel for co-defendant Mark Mey before the court had even conducted *voir dire* of the jury panel:

> [I]n prior motions, there was an attempt in motions to keep gang activity out, and that was when there was potentially maybe one witness, Mr. Rodriguez.   Now a number of other witnesses have now either pled, and are going to testify, have not pled, but are going to testify.
>
> And given how that is going, at this point, I don't think there's any way gangs and Bloods and Crips are not going to come into this trial . . . .

(Dkt. #12-16: 21-22.)[6]

To mitigate the danger of unfair prejudice, Mey's counsel, joined by petitioner's and all other defendants' counsel, asked the court to question potential jurors about their knowledge or beliefs about gangs.   The court granted the request.   During voir dire, each of the potential jurors was told that he or she would likely hear testimony about gangs and asked whether such testimony would affect his or her ability to decide the case impartially. (Dkt. #12-16: 141-238.)   In addition, the court instructed the jurors both before and after trial that they might hear testimony about gangs and gang activity, including references to the Crips and the Bloods, and they were not to infer any guilt to any defendant based merely on his gang affiliation.   (Dkt. #12-17: 52; 12-32: 14-25.)

Thus, by the time trial began, the defense was no longer interested in keeping gang-related evidence out of the trial.   To the contrary, defense counsel used the cooperating witnesses' gang affiliation to challenge their credibility and to argue to the jury that they were falsely incriminating the defendants in order to cover up for other gang members.

---

[6] It appears that all the parties -- the State, petitioner, and the state trial and appellate courts -- overlooked this portion of the trial record during the state post-conviction proceeding.

At the same time, to mitigate the danger of unfair prejudice to the defendants, defense counsel ensured that the trial court inoculated the jury during *voir dire* and in its instructions. Having adopted this plainly reasonable strategy at trial, petitioner cannot complain now about the admission of gang-related evidence whether offered by his attorney, other defense counsel or the State, so long as not argued as proof of guilt by itself. Said another way, petitioner could not have been unfairly prejudiced by evidence whose introduction was an integral part of his own defense.

Because the record as a whole supports the Wisconsin Court of Appeals' determination that petitioner was not entitled to relief on his claims related to the gang-related evidence, he is not entitled to a writ of habeas corpus on these claims either. *Whatley,* 833 F.3d at 779.

## III.   Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Petitioner is entitled to a certificate of appealability on his claim that his trial counsel was ineffective for not requesting a lesser-included offense jury instruction. That question is close enough that reasonable jurists might resolve it differently. The proper resolution of his other claims, however, is not reasonably debatable.

## ORDER

IT IS ORDERED that petitioner Jonathan Adeyanju's petition for a writ of habeas corpus is DENIED. The clerk of court is directed to enter judgment for respondent and close this case.

A certificate of appealability shall issue on petitioner's claim of ineffective assistance of counsel based on counsel's failure to request a lesser-included offense instruction.

Entered this 25th day of March, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge